**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**

Tracie Foxworth, on behalf of herself and all others similarly situated,

Plaintiff,

v.

Sanford Surrounded LLC, eXp Realty LLC, and eXp Realty of Southeast NC, LLC,

Defendants.

CASE NO.

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

## Nature of this Action

1. Tracie Foxworth ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Sanford Surrounded LLC ("Sanford Surrounded"), eXp Realty LLC ("eXp National"), and eXp Realty of Southeast NC, LLC ("eXp SE", and, collectively, "Defendants") under the Telephone Consumer Protection Act ("TCPA").

2. Upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by delivering more than one advertisement or marketing call or text message to residential or cellular telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

## Parties

3. Plaintiff is a natural person who resides in Lumberton, North Carolina.

4. Sanford Surrounded is a North Carolina limited liability company that runs

a real estate business, and its principal place of business and headquarters is located in Sanford, North Carolina.

5. eXp Realty, LLC is a Washington limited liability company with its principal office in Bellingham, Washington.

6. eXp Realty of Southeast NC, LLC is a Delaware limited liability company with its principal office in Bellingham, Washington.

7. Upon information and belief, Sanford Surrounded owns and operates the website www.sanfordsurrounded.com.

8. Sandford Surrounded touts throughout this website that it is brokered by eXp Realty.

9. Sanford Surrounded's CEO, Chelsea Nicole Ciucevich, and COO, Walter Ciucevich, are both licensed real estate agents with the North Carolina Real Estate Commission, and their brokerage firm affiliations attached to their real estate licenses are registered to eXp National and eXp SE, respectively.

**Jurisdiction and Venue**

10. This Court has subject matter jurisdiction under 47 U.S.C. § 227(c)(5), and 28 U.S.C. § 1331.

11. Venue is proper before this Court under to 28 U.S.C. §§ 1391 (b)(1) and (b)(2) as Sanford is headquartered in this District, and because Defendants engaged in the complained-of conduct from this District.

12. Specifically, Defendants directed the solicitation messages to Plaintiff's

telephone numbers from this District, and Plaintiff received Defendants' solicitation message in this District.

**Factual Allegations**

13. Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(910) 736-XXXX.

14. Plaintiff uses her cellular telephone as her personal residential telephone number.

15. In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

16. Plaintiff registered her cellular telephone number with the DNC Registry on June 23, 2006, and has maintained that registration through the present date.

17. Starting in or around August 2024 and continuing through the present, Plaintiff received a number of text messages from Defendants through the telephone number (919) 261-3168, seeking to solicit Plaintiff to use Defendants for their real estate services. *See, e.g.*:




18. Each of the text messages were for the purposes of telemarketing and soliciting for Defendants' business; specifically offering Defendants' services to: (1) buy Plaintiff's property directly; (2) help list her property as-is; *or* (3) help remodel her property through Defendants' "fix-before-you-list" program.

19. The purpose of the text messages at issue was, therefore, to advertise and to market Defendants' business or services.

20. Plaintiff did not recognize the sender, is (and was) not selling her home, and was not looking to sell her home.

21. And, to be sure, Plaintiff is not named "Jerry," and never has been named "Jerry" or any variation thereof.

22. Sanford Surrounded is a full-service real estate firm that helps customers buy or sell property: "We're committed to providing a smooth and fun real estate transaction.

Our business is built on communication, dedication, hard work & trust. Whether you are looking to buy or sell a home, we will help uncover what's most important to you and deliver a strategy that will help you accomplish those goals."[1]

23. Moreover, Sanford Surrounded's website touts Mr. Ciucevich's military background in a materially identical manner to the subject text messages, noting that "He's an 82nd Airborne Army Veteran and he believes in a service over self mentality that radiates across the Sanford Surrounded team."[2]

24. Defendants' messages to Plaintiff constitute telemarketing or solicitation under the TCPA.

25. The FCC's guidance is particularly illuminating here. Congress charged the FCC with implementing the Federal Do-Not-Call rules. 47 U.S.C. § 227(c)(1). In 2005, the National Association of Realtors petitioned the FCC for an exemption from the Do-Not-Call rules' definition of "solicitation" for calls made by real estate agents to property owners with lapsed real estate listings, where the real estate agent solicits their services to a prospective seller. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788 (2005). In interpreting the definition of "telephone solicitation," the FCC rejected this proposed exemption, and concluded "that a telephone solicitation would include calls by real estate agents to property owners for the purpose of

---

1 https://www.sanfordsurrounded.com/about (last visited September 27, 2024).

2 https://www.sanfordsurrounded.com/about/walter-ciucevich (last visited September 27).

offering their services to the owner, whether the property listing has lapsed or not." *Id.* at 3793-94.

26. In other words, the FCC has expressly declared that Defendants' conduct qualifies as a regulated telephone solicitation which accordingly must adhere to both 1) the DNC Registry; and 2) the requirement that a telemarketer obtain prior express written consent before sending any telemarketing or solicitation messages.

27. Plaintiff did not request real estate services from Defendants, did not use Defendants' website or submit any inquiries on it, and did not otherwise communicate with Defendants prior to receiving these telemarketing communications.

28. Upon information and good faith belief, the text messages and phone calls at issue were sent by Defendants voluntarily.

29. The text messages at issue were sent for non-emergency purposes.

30. Plaintiff suffered actual harm as a result of the text messages at issue in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

31. Upon information and good faith belief, Defendants knew, or should have known, that Plaintiff registered her cellular telephone number with the DNC Registry.

32. Other consumers have complained about Sanford Surrounded sending solicitation or telemarketing text messages without consent. *See, e.g.*:




33. Defendants' conduct is also consistent with the conduct alleged in *Wright, et al. v. EXP Realty, LLC*, Case No. 6:18-cv-018151, which resulted in a court-approved class settlement pursuant to Federal Rule of Civil Procedure 23(e).

34. As a result, eXp National and eXp SE knew, or should have known, that they and their affiliates were and are engaging in prohibited telemarketing conduct by delivering solicitation messages, absent prior express written consent, to consumers who registered their telephone numbers on the DNC Registry.

35. Defendants knew, or should have known, that they were generating or accepting leads that were obtained in violation of the TCPA, and—despite having a heightened duty to confirm that they and their employees complied with the TCPA in the face of numerous prior consumer complaints—proceeded to accept the benefits of those unlawful leads anyway.

36. eXp National also appears to provide "Powerful lead generation platforms" to its agents, along with training and mentorship for lead generation techniques.[3]

37. Moreover, upon information and good faith belief, eXp National and eXp SE receive a portion of commission proceeds derived from any representation of a consumer by Sanford Surrounded.[4]

38. If a consumer were to give prior express written consent to Defendants to receive telemarketing text messages, they do so by "agree[ing] to be contacted by Sanford Surrounded - Brokered By EXP Realty via call, email, and text."[5]

39. Lastly, to the extent that eXp National and eXp SE contend that the conduct of Sanford Surrounded cannot be imputed to them, upon information and good faith belief, eXp National and eXp SE mandate the following:

> All real estate brokerage relationships established for any real estate transactions, regardless of agency status, exist solely as between eXp and the client (or customer), and not as between Agent and the client (or customer). Agent provides real estate services to the client (or customer) on eXp's behalf; all listings taken by Agent in connection with eXp's business are and remain the separate and exclusive property of eXp, and not of Agent. During the Term of this ICA, Agent shall diligently carry out Agent's duties on behalf of eXp with all reasonable skill, care, and diligence as expected of a licensed real estate professional in Agent's state(s) of licensure.[6]

---

3 https://cdn.bfldr.com/BI7DUWTF/at/f5pqbmkb9rrm648rbjb44b/US_eXp_Explained_-_JOIN_SITE_updated_05022024.pdf , at 11 (last visited September 27, 2024).

4 *See, e.g.*, eXp Realty sample Independent Contractor Agreement, attached hereto as "Exhibit A."

5 https://www.sanfordsurrounded.com (last visited September 27, 2024).

6 Ex. A.

40. As a result, eXp National and eXp SE are either directly liable for sending the text messages at issue, or in the alternative, are liable for Sanford Surrounded sending the text messages at issue on a theory of actual authority, implied authority, or ratification, given that the messages directed consumers to Defendants' joint venture for real estate representation, eXp National and eXp SE had notice that they, and their various affiliates, engaged in similar telemarketing conduct in violation of the TCPA, and eXp National and eXp SE nevertheless continued to accept the benefits of Sanford Surrounded's conduct.

41. Moreover, eXp National has previously been sued for similar unsolicited telemarketing communications and settled those claims on a class basis for over $26,000,000 in Wright v. EXP Realty, LLC, Case No. 6:18-cv-01851-PGB-TBS (M.D. Fla.).

42. As a result, eXp National knew, or should have known, that it and its subsidiaries and affiliates have been engaged in telemarketing to telephone numbers on the DNC Registry without obtaining prior express written consent to do so, and despite this knowledge, failed to cease its conduct while continuing to accept the benefits from the ongoing telemarketing campaigns.

43. Upon information and good faith belief, Defendants acted willfully and intentionally in engaging in this telemarketing campaign because Defendants failed to even *attempt* to obtain prior express written to deliver the subject text messages, and because the text messages themselves presuppose a lack of consent, given that they expressly acknowledge a lack of prior relationship or consent in the language of the messages.

## Class Action Allegations

44. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following class (the "Class"):

> All persons throughout the United States (1) to whom Sanford Surrounded LLC, eXp Realty LLC, or eXp Realty of Southeast NC, LLC delivered, or caused to be delivered, more than one text message or telephone call within a 12-month period, promoting Sanford Surrounded LLC's, eXp Realty LLC's, or eXp Realty of Southeast NC, LLC's, or their business partners', goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Sanford Surrounded LLC, eXp Realty LLC, or eXp Realty of Southeast NC, LLC delivered, or caused to be delivered, at least two of the text messages or telephone calls within the 12-month period, and (3) within four years preceding the date of this complaint through the date of class certification.

45. Excluded from the Class are Defendants, their officers, directors, managers, and members, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

46. Upon information and belief, the members of the Class are so numerous that joinder of all of them is impracticable.

47. The exact number of members of the Class are unknown to Plaintiff at this time and can be determined only through appropriate discovery.

48. The members of the Class are ascertainable because the class is defined by reference to objective criteria.

49. In addition, the members of the Class are identifiable in that, upon information and belief, their cellular telephone numbers, names, and addresses can be

identified in business records maintained by Defendants, and by third parties.

50. Plaintiff's claims are typical of the claims of the members of the class.

51. As it did for all members of the Class, Defendants delivered solicitation text messages to Plaintiff's telephone number more than thirty days after Plaintiff registered her cellular telephone number with the DNC Registry.

52. Plaintiff's claims, and the claims of the members of the Class, originate from the same conduct, practice, and procedure on the part of Defendants.

53. Plaintiff's claims are based on the same theories as the claims of the members of the Class.

54. Plaintiff suffered the same injuries as the members of the Class.

55. Plaintiff will fairly and adequately protect the interests of the members of the Class.

56. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Class.

57. Plaintiff will vigorously pursue the claims of the members of the Class.

58. Plaintiff has retained counsel experienced and competent in class action litigation.

59. Plaintiff's counsel will vigorously pursue this matter.

60. Plaintiff's counsel will assert, protect, and otherwise represent the members of the Class.

61. The questions of law and fact common to the members of the Class predominate over questions that may affect individual members of that class.

62. Issues of law and fact common to all members of the Class are:

a. Defendants' conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

b. Defendants' practice of delivering text messages or placing telephone calls, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

c. Defendants' conduct, pattern, and practice as it pertains to obtaining prior express written consent from a consumer before delivering advertisement and telemarketing text messages to that consumer's telephone number;

d. Whether eXp National and eXp SE are directly liable for delivering text messages or placing telephone calls, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days, or whether they are alternately liable under agency theories;

e. Defendants' violations of the TCPA; and

f. The availability of statutory penalties.

63. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

64. If brought and prosecuted individually, the claims of the members of the Class would require proof of the same material and substantive facts.

65. The pursuit of separate actions by individual members of the Class would, as a practical matter, be dispositive of the interests of other members of that class, and could substantially impair or impede their ability to protect their interests.

66. The pursuit of separate actions by individual members of the Class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

67. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Class.

68. The damages suffered by the individual member of the Class may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of that class to redress the wrongs done to them.

69. The pursuit of Plaintiff's claims, and the claims of the members of the Class, in one forum will achieve efficiency and promote judicial economy.

70. There will be no extraordinary difficulty in the management of this action as a class action.

71. Defendants acted or refused to act on grounds generally applicable to the members of the Class, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Class**

72. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-71.

73. A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

74. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

75. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

76. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those

regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

77. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members who registered their respective cellular or residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

78. Defendants violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiff and members of the Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200.

79. In the alternative, eXp National and eXp SE are liable for Sanford Surrounded's conduct because Sanford Surrounded delivered the underlying text messages pursuant to, and within the scope of, a contractual agreement with eXp National and eXp SE.

80. Moreover, eXp National and eXp SE ratified Sanford Surrounded's conduct by accepting and servicing leads generated by Sanford Surrounded's telemarketing campaign, and agreeing to share revenue with Sanford Surrounded that arose out of that telemarketing campaign.

81. As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, Plaintiff, and the members of the Class, are entitled to damages in an amount to be proven at trial.

## Prayer for Relief

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action;

b. Designating Plaintiff as a class representative of the class under Federal Rule of Civil Procedure 23;

c. Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d. Adjudging and declaring that Defendants violated 47 U.S.C. § 227(c)(5);

e. Enjoining Defendants from continuing their violative behavior, including continuing to deliver solicitation text messages to telephone numbers registered with the DNC Registry for at least thirty days;

f. Awarding Plaintiff and the members of the class damages under 47 U.S.C. § 227(c)(5)(B);

g. Awarding Plaintiff and the members of the Class treble damages under 47 U.S.C. § 227(c)(5)(C);

h. Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i. Awarding Plaintiff and the members of the Class any pre-judgment and post-judgment interest as may be allowed under the law; and

j. Awarding such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: September 28, 2024

*/s/ Brian L. Kinsley*
Brian L. Kinsley (N.C. Bar No. 38683)
**COX, STANSBERRY & KINSLEY LLC**
2024 Main Avenue SW, Suite B
Cullman, AL 35055
T: (205) 870-1205 F: (205) 870-1252
E-mail: Blkinsley@cskattorneys.com

Alex D. Kruzyk* (to seek admission by special appearance)
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd. Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444
akruzyk@pkglegal.com

*Counsel for Plaintiff and the proposed class*